UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JESUS ZAMORA-LEON | ) | CASE NO. 15-9206 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED OF OMAHA LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | NOVEMBER 23, 2015 |

## COMPLAINT

The Plaintiff, Jesus Zamora-Leon ("Zamora"), by and through his undersigned attorneys, for its Complaint against the Defendant, United of Omaha Life Insurance Company ("United of Omaha"), alleges as follows:

## PARTIES

1. Plaintiff, Zamora ("Zamora"), is an individual who is a citizen of Peru and resides at Avenida Jorge Basadre 310, Piso 7 San Isidro, Lima, Peru.

2. Defendant, United of Omaha, is upon information and belief a life insurance company organized and existing under the laws of the State of Nebraska with an office and principal place of business at Mutual of Omaha Plaza, Omaha, Nebraska 68175. Defendant, United of Omaha, is a citizen of Nebraska.

1

3. Upon information and belief, and at all times relevant hereto, the Defendant, United of Omaha, conducted business within the State of New York with respsect to its dealings with the Plaintiff.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(2), in that the Plaintiff is a citizen of Peru and the Defendant is a citizen of Nebraska, and the amount in controversy exceeds $75,000.00.

5. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial portion of the events or omissions giving rise to this action occurred in the State of New York.

## ZAMORA'S $2,000,000 LIFE INSURANCE POLICY WITH UNITED OF OMAHA

6. On or about October 7, 1999, Plaintiff, Zamora, applied for a life insurance policy with a death benefit of $2,000,000 with the Defendant, United of Omaha, through an insurance broker, Mark Kazmac ("Kazmac"), in New York City, New York.

7. On or about October 8, 1999, the Plaintiff, Zamora, submitted to a medical examination in connection with said life insurance application in New York City, New York, where he previously had resided for many years, where he was staying at the time of the application for this $2,000,000 life insurance policy, and where he typically stayed whenever he visited the United States.

8. All of the Plaintiff's dealings with Defendant regarding the application for this $2,000,0000 life insurance policy with United of Omaha occurred through the insurance broker, Kazmac, in New York City, New York.

9. On December 2, 1999, the Defendant, United of Omaha, issued a life insurance policy to the Plaintiff, Zamora, Policy #BU1072390, with a death benefit in the amount of $2,000,000 ("Zamora's $2,000,000 Policy"). A copy of Zamora' $2,000,000 Policy is attached hereto as **Exhibit A** and made a part hereof.

10. Zamora's $2,000,000 Policy was owned by Zamora, insured the life of Zamora, and named his wife, Julie de Trazegnies ("Julie"), as beneficiary.

11. The annual premium for Zamora's $2,000,000 Policy was $2,520, and remained level for twenty years.

## ZAMORA'S $3,000,000 LIFE INSURANCE POLICY WITH UNITED OF OMAHA

12. On or about October 7, 1999, the Plaintiff, Zamora, also applied for another life insurance policy with a death benefit of $3,000,000 with United of Omaha through the insurance broker, Kazmac, in New York City, New York.

13. On or about October 8, 1999, the Plaintiff, Zamora, submitted to a medical examination in connection with said life insurance application in New York City, New York, where he previously had resided for many years, where he typically stayed whenever he visited the United States, and where he was staying at the time of the application for this $3,000,000 life insurance policy.

3

14. All of the Plaintiff's dealings with Defendant regarding the application for this $3,000,0000 life insurance policy with United of Omaha occurred through the insurance broker, Kazmac, in New York City, New York.

15. On or about December 2, 1999, the Defendant, United of Omaha, issued a life insurance policy to the Zamora, Policy #BU1072388 with a death benefit amount of $3,000,000 ("Zamora's $3,000,000 Policy"). A copy of Zamora's $3,000,000 Policy is attached hereto as **Exhibit B** and made a part hereof.

16. At the time of its issuance, Zamora's $3,000,000 Policy insured his life but was owned by his company, Corporacion Miski, S.A., and the beneficiary was also Corporacion Miski, S.A. Thereafter, the beneficiary was changed to Banco de Credito del Peru, as a creditor of Corporacion Miski, S.A., and eventually to Zamora's estate.

17. Thereafter, the ownership rights to Zamora's $3,000,000 Policy were assigned and transferred by Corporacion Miski, S.A. to the Plaintiff, Zamora.

18. The annual premium for Zamora's $3,000,000 Policy was $3,750, and remained level for twenty years.

### JULIE'S $750,000 LIFE INSURANCE POLICY WITH UNITED OF OMAHA

19. At all times relevant hereto, Julie was Zamora's spouse and resided with him in Lima, Peru.

20. On or about June of 2001, Zamora's spouse, Julie, applied for a life insurance policy with a death benefit of $750,000 with the Defendant, United of Omaha, through the insurance broker, Kazmac, in New York City, New York.

21. On or about June 30, 2001, Julie submitted to a medical examination in connection with said life insurance application in New York City, New York, where she previously had resided with her husband, Zamora, where she was staying at the time of the application and where she typically stayed whenever she and her husband visited the United States.

22. All of Julie's dealings with Defendant regarding the application for this life insurance policy with United of Omaha occurred through the insurance broker, Kazmac, in New York City, New York.

23. On or about November 27, 2001, the Defendant, United of Omaha, issued a life insurance policy on the life of Julie, Policy #BU1988107, with a death benefit in the amount of $750,000 ("Julie's Policy"). A copy of the Julie's Policy is attached hereto as **Exhibit C** and made a part hereof.

24. Julie was the owner and the insured on Julie's Policy, and Zamora was the named beneficiary in said policy.

25. The annual premium for Julie's Policy was $825, and remained level for twenty years.

## PLAINTIFFS' PAYMENTS OF PREMIUMS

26. At all relevant times mentioned herein, Defendant, United of Omaha, billed Zamora and Julie for the annual premiums for Zamora's $2,000,000 Policy, Zamora's $3,000,000, and Julie's Policy (collectively the "Policies") at their address in Lima, Peru.

27. At all relevant times mentioned herein, Defendant, United of Omaha, was aware, or should have been aware, that Zamora and Julie were residents of Peru.

28. At all relevant times mentioned herein, Zamora and Julie kept Defendant, United of Omaha, advised of their current home and mailing addresses in Peru, and Defendant, United of Omaha, was aware, or should have been aware, of their home and mailing addresses in Peru.

29. Beginning from the time of the issuance of Julie's Policy, the Plaintiff, Zamora, paid the premiums for the Policies in precisely the same manner: he purchased official bank checks from Banco de Credito del Peru ("BCP")'s affiliate in the US (Banco de Credito del Peru Miami Agency at 121 Alhambra Plaza, Coral Gables, Florida 33134), such checks being purchased and then issued by the bank instead of Zamora's account, but drawn on his bank account at BCP, in the amount of $3,750 for the $3,000,000 Policy, $2,520 for the $2,000,000 Policy, and $825 for Julie's Policy. In each instance the funds for said bank checks were debited and withdrawn from Zamora's bank account with BCP at the time of purchase and were mailed or delivered to the Defendant, United of Omaha, in Omaha, Nebraska at its post office box listed on the Policies as the appropriate location for the delivery of premium payments due on each policy. In each instance the said bank checks were mailed by courier from Peru to the Defendant.

30. From the time of the issuance of Julie's Policy on November of 2001 through 2012, Plaintiff, Zamora, paid the premiums for the Policies in precisely the same manner.

31. From 2001 through 2011, United of Omaha, accepted payment of the premiums for the Policies tendered by Zamora in this manner without incident or question.

32. In late 2012, Plaintiff, Zamora, received annual premium notices for the Policies from United of Omaha at his address in Lima, Peru. Copies of those premium notices are attached hereto as **Exhibit D** and made a part hereof.

33. In the same manner as he had done for the previous decade, Zamora purchased bank checks from BCP, with a corresponding debit from Zamora's account at BCP, for issuance to the Defendant, United of Omaha, for each of Policies.

34. In late November of 2012, Plaintiff, Zamora, sent Bank Check #RA202909 in the amount of $3,750 for payment of the premium due on Zamora's $3,000,000 Policy, Check #RA202910 in the amount of $2,520 for payment of the premium due on Zamora's $2,000,000 Policy, and Check #RA202911 in the amount $825 for payment of the premium due on Julie's Policy to the Defendant, United of Omaha, at its post office box address listed on the Policies and at the same post office box where Zamora sent, and United of Omaha accepted, premium payments for more than a decade. Copies of those checks are attached hereto as **Exhibit E** and made a part hereof.

35. Zamora paid and delivered to United of Omaha the annual premium due on December 2, 2012 on the $2,000,000 Policy and $3,000,000 Policy and the premium due on November 27, 2012 on Julie's Policy in full and in a timely manner as set forth in the Policies.

36. Upon information and belief, those three checks for the premium payments were received by the Defendant, United of Omaha, and should have been applied toward the payments due on the Policies to pay the annual premiums to their anniversary dates in November and December of 2013.

37. Defendant, United of Omaha, did not advise Plaintiff, Zamora, that it did not receive the premium payments for the Policies, nor did it advise Plaintiff, Zamora, that the Policies were in danger of lapsing in December of 2012 or at any time thereafter.

38. At no time within one year after the premium due dates on the Policies did the Defendant, United of Omaha, advise the Plaintiff, Zamora, or Julie in writing that the premium payments had not been received, that the Policies were in danger of lapsing, or that the Policies had lapsed.

39. Upon sending the payments for the premiums on the Policies, Plaintiff, Zamora, understood that all the premiums on the Policies were paid through the anniversary dates of the Policies in November or December of 2013 and that coverage under the Policies remained in full force and effect.

## IMPROPER CANCELLATION OF THE POLICIES

40. In early 2013, Plaintiff, Zamora, and Julie decided to change the beneficiaries on each of the Policies to Fundación Baltazar y Nicolas (the "Foundation"), a charitable foundation formed in the memory of their two deceased children, Baltazar Zamora and Nicolas Zamora, to assist in the development of young children in impoverished urban areas in Peru.

41. In 2013, Plaintiff, Zamora, attempted to contact Defendant, United of Omaha, to discuss a change in beneficiary of the Policies to the Foundation, and United of Omaha informed him orally that Defendant was taking the position that it had cancelled the Policies for non-payment of the premiums.

42. Since Plaintiff, Zamora, had mailed and delivered the premium payments to United of Omaha in a timely manner and in the same manner and to the same post office box address as he had done for at least the previous decade, and that he had received no written notice of any past due premium payments or warnings of lapse of the Policies, he advised Defendant, United of Omaha, that it must be mistaken since the premiums were, in fact, paid in a timely manner, as set forth above.

43. Defendant, United of Omaha, had not sent Plaintiff, Zamora, or Julie, any written notice that the premium notices had not been received or that the Policies were in danger or lapsing or had lapsed.

44. In or about February of March of 2013, Plaintiff, Zamora, provided United of Omaha with copies of the three BCP bank checks that had been sent to United of Omaha in full payment of the premiums due under the Policies, proof that said BCP bank checks had been mailed and delivered to United of Omaha in a timely manners, and information demonstrating that the premium payments had been deducted from Plaintiff's BCP account, and requested that Defendant, United of Omaha, immediately correct the improper cancellation of the Policies and restore the Policies to full force and effect.

45. Despite Plaintiff's request, and the fact that it had failed to send any written notice of past due premiums or potential lapse, Defendant, United of Omaha, failed, neglected and refused to restore the Policies to full force and effect and continued to treat same as cancelled and terminated.

**REINSTATEMENT REQUEST FOR ZAMORA'S $2,000,000 AND $3,000,000 POLICIES**

46. Rather than reverse the improper cancellation of the Policies and restore the Policies to full force an effect, Defendant, United of Omaha, directed Zamora to apply for reinstatement of the Policies and advised him that reinstatement would be granted.

47. At the time of Defendant, United of Omaha's, improper cancellation of the Policies, Julie had become seriously ill and unable to purchase any replacement insurance coverage. Plaintiff, Zamora, and Julie did not submit an application for reinstatement of Julie's Policy due to her illness.

48. In early 2014, in an effort to mitigate the damages suffered by United of Omaha's improper and wrongful attempted cancellation of Zamora's $2,000,000 Policy and Zamora's $3,000,000 Policy (collectively "Zamora's Policies"), Plaintiff, Zamora, submitted an Application for Reinstatement of Zamora's Policies to the Defendant, United of Omaha.

49. At the request of Defendant, United of Omaha, Plaintiff, Zamora, submitted proof of his good health and continued insurability to the Defendant, United of Omaha.

50. At the time of the submission of the Application for Reinstatement of Zamora's Policies, Plaintiff, Zamora, forwarded to Defendant, United of Omaha, all of the premiums that would have been payable under Zamora's Policies if they had not been wrongfully terminated by Defendant, United of Omaha.

51. Despite its express obligation in the Policies to reinstate Zamora's Policies upon receipt of the Application for Reinstatement, evidence of continued insurability, and payment of the premiums, the Defendant, United of Omaha, wrongfully refused to reinstate Zamora's Policies. Upon information and belief, Defendant, United of Omaha, denied the reinstatement of

Zamora's Policies due to the fact that he was a resident of Peru – a fact known to Defendant, United of Omaha from the time it issued the Policies and began accepting the payment of premiums.

**FIRST CAUSE OF ACTION**  (Breach of Contract/Wrongful Termination of Zamora's $2,000,000 Policy)

52. Paragraphs 1 through 51 are repeated and realleged as if fully set forth herein.

53. The Defendant's attempted cancellation and termination of Zamora's $2,000,000 Policy was wrongful, improper, and in breach of the terms of said policy in on or more of the following ways:

(a) In that it terminated the policy for nonpayment of premium despite the fact that the premium payment had been mailed or delivered to it in the time and manner provided for in the policy;

(b) In that it terminated the policy for nonpayment of premium despite the fact that the premium payment had been paid within the time provided for in the policy;

(c) In that it terminated the policy without providing Plaintiff with any notice that the premium payment had not been received and/or the policy was in danger of lapsing for non-payment of premium, as was Defendant's custom and practice;

(d) In that it terminated the policy in early 2013, less than one year prior to the alleged payment default on the policy, without first providing a written notice to the Plaintiff that the annual premium had not been paid and that the policy was in danger of lapse, in violation of New York Insurance Law Section 3211(a)(1); and/or

11

(e)     In that it refused to restore and reinstate the policy to full force and effect upon being provided with evidence that the premium had been paid in a timely manner.

54.    As a result of the Defendant's improper cancellation and termination of Zamora's $2,000,000 Policy, and breach of said policy, the Plaintiff has suffered money damages.

## SECOND CAUSE OF ACTION
**(Breach of Contract/Wrongful Termination of $3,000,000 Policy)**

55.    Paragraphs 1 through 51 are repeated and realleged as if fully set forth herein.

56.    The Defendant's attempted cancellation and termination of Zamora's $3,000,000 Policy was wrongful, improper, and in breach of the terms of said policy in on or more of the following ways:

(a)     In that it terminated the policy for nonpayment of premium despite the fact that the premium payment had been mailed or delivered to it in the time and manner provided for in the policy;

(b)     In that it terminated the policy for nonpayment of premium despite the fact that the premium payment had been paid within the time provided for in the policy;

(c)     In that it terminated the policy without providing Plaintiff with any notice that the premium payment had not been received and/or the policy was in danger of lapsing for non-payment of premium, as was the Defendant's custom and practice;

(d)     In that it terminated the policy in early 2013, less than one year prior to the alleged payment default on the policy, without first providing a written notice to the Plaintiff that

the annual premium had not been paid and that the policy was in danger of lapse, in violation of New York Insurance Law Section 3211(a)(1); and/or

(e) In that it refused to restore and reinstate the policy to full force and effect upon being provided with evidence that the premium had been paid in a timely manner.

57. As a result of the Defendant's improper cancellation and termination of Zamora's $3,000,000 Policy, and breach of said policy, the Plaintiff has suffered money damages.

**THIRD CAUSE OF ACTION**
**(Breach of Contract/Wrongful Termination of Julie's Policy)**

58. Paragraphs 1 through 51 are repeated and realleged as if fully set forth herein.

59. The Defendant's attempted cancellation and termination of Julie's Policy was wrongful, improper, and in breach of the terms of said policy in on or more of the following ways:

(a) In that it terminated the policy for nonpayment of premium despite the fact that the premium payment had been mailed or delivered to it in the time and manner provided for in the policy;

(b) In that it terminated the policy for nonpayment of premium despite the fact that the premium payment had been paid within the time provided for in the policy;

(c) In that it terminated the policy without providing Plaintiff or Julie with any notice that the premium payment had not been received and/or the policy was in danger of lapsing for non-payment of premium, as was the Defendant's custom and practice;

(d) In that it terminated the policy in early 2013, less than one year prior to the alleged payment default on the policy, without first providing a written notice to the Plaintiff or Julie that the annual premium had not been paid and that the policy was in danger of lapse, in violation of New York Insurance Law Section 3211(a)(1); and/or

(e) In that it refused to restore and reinstate the policy to full force and effect upon being provided with evidence that the premium had been paid in a timely manner.

60. As a result of the Defendant's improper cancellation and termination of Julie's Policy, and breach of said policy, the Plaintiff has suffered money damages.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract for Refusal to Reinstate $2,000,000 Policy)**

61. Paragraphs 1 through 51 are repeated and realleged as if fully set forth herein.

62. The Defendant's attempted cancellation and termination of Zamora's $2,000,000 Policy was wrongful, improper, and in breach of the terms of said policy in on or more of the following ways:

(a) In that it refused to reinstate the policy, despite Plaintiff's submission of a written application signed by the owner and the Insured, furnishing of evidence of insurability, and payment of any past due premiums, despite the fact that it was obligated to reinstate the policy following the submission of those items within five years of the alleged due date of the unpaid premium;

(b) In that it refused to reinstate the policy for reasons unrelated to the furnishing of evidence of insurability; and/or

(c) In that it refused to reinstate the policy for improper reasons and/or reasons that were not permitted under the terms of the policy or applicable law.

63. As a result of the Defendant's improper cancellation and termination of Zamora's $2,000,000 Policy, the Plaintiff has suffered money damages.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract for Refusal to Reinstate $3,000,000 Policy)**

64. Paragraphs 1 through 51 are repeated and realleged as if fully set forth herein.

65. The Defendant's attempted cancellation and termination of Zamora's $3,000,000 Policy was wrongful, improper, and in breach of the terms of said policy in on or more of the following ways:

(a) In that it refused to reinstate the policy, despite Plaintiff's submission of a written application signed by the owner and the Insured, furnishing of evidence of insurability, and payment of any past due premiums, despite the fact that it was obligated to reinstate the policy following the submission of those items within five years of the alleged due date of the unpaid premium;

(b) In that it refused to reinstate the policy for reasons unrelated to the furnishing of evidence of insurability; and/or

(c) In that it refused to reinstate the policy for improper reasons and/or reasons that were not permitted under the terms of the policy or applicable law.

66. As a result of the Defendant's improper cancellation and termination of Zamora's $3,000,000 Policy, the Plaintiff has suffered money damages.

## SIXTH CAUSE OF ACTION
**(Breach of Contract for Failure to Pay Death Benefit Due on Julie's Policy)**

67. Paragraphs 1 through 51 are repeated and realleged as if fully set forth herein.

68. Paragraph 59 is repeated and realleged as if fully set forth herein.

69. On or about February 16, 2015, Julie passed away.

70. On or about April 7, 2015, Plaintiff, Zamora, submitted a death certificate to Defendant, United of Omaha, together with a request for payment of the $750,000 death benefit due under Julie's Policy, less any reduction for premiums that had not been paid due to Defendant's improper attempt to terminate Julie's Policy.

71. Despite the submission of a request for payment of the death benefit due under Julie's Policy, the Defendant, United of Omaha, has failed, neglected and refused to pay the death benefit to Plaintiff.

72. As a result of the Defendant's failure to pay the death benefit due under Julie's Policy, the Plaintiff has suffered money damages.

WHEREFORE, the Plaintiff claims the following relief:

### As to the First Count

1. An order declaring Zamora's $3,000,000 Policy to be in full force and effect;
2. Money damages;
3. Such other and further relief as the Court deems just and proper.

### As to the Second Count

1. An order declaring Zamora's $2,000,000 Policy to be in full force and effect;
2. Money damages;
3. Such other and further relief as the Court deems just and proper.

### As to the Third Count

1. An order declaring Julie's Policy to be in full force and effect;
2. Money damages;
3. Such other and further relief as the Court deems just and proper.

### As to the Fourth Count

1. An order declaring that Zamora's $3,000,000 Policy be reinstated;
2. Money damages;
3. Such other and further relief as the Court deems just and proper.

### As to the Fifth Count

1. An order declaring that Zamora's $2,000,000 Policy be reinstated;
2. Money damages;
3. Such other and further relief as the Court deems just and proper.

**As to the Sixth Count**

1. Money damages;

2. Interest on the death benefit from the date of Julie's death to the date of payment;

3. Such other and further relief as the Court deems just and proper.

THE PLAINTIFF,

BY: /s/ Scott M. Harrington
Scott M. Harrington SH0588
Jonathan P. Whitcomb JW3245
DISERIO MARTIN O'CONNOR &
   CASTIGLIONI LLP
One Atlantic Street
Stamford, CT 06901
(203) 358-0800
sharrington@dmoc.com
jwhitcomb@dmoc.com

H:\Matters\30611\30611 Complaint 20151007.docx