USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/18/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JESUS ZAMORA-LEON,                                                      :
                                                                        :
                          Plaintiff,                 :     15-CV-9206 (JMF)
                                                                        :
        -v-                                                             :     MEMORANDUM OPINION
                                                                        :     AND ORDER
UNITED OF OMAHA LIFE INSURANCE COMPANY,                                 :
                                                                        :
                          Defendant.                  :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       The primary issue in this contract case, between Plaintiff Jesus Zamora-Leon ("Zamora") and Defendant United of Omaha Life Insurance Company ("United" or the "Company"), is whether three life insurance policies were properly terminated for nonpayment of premiums. Zamora, through his office assistant, sent the relevant premium payments to United, but United did not receive them. Zamora's assistant learned of that fact while the policies were still in effect, but she failed to take the necessary steps to cure the problem. United now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. (Docket No. 34). For the reasons that follow, the Court agrees with United that the insurance policies were properly terminated. Accordingly, United's motion is granted, and the case is dismissed.

## BACKGROUND

       The relevant facts, taken from the Complaint and admissible materials submitted in connection with the pending motion, are largely, if not entirely, undisputed. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

       Zamora — a resident of Peru — owned three United insurance policies: two of them he applied for and purchased in New Jersey in 1999 and one his then-wife, Julie, applied for and

1

purchased in New Jersey in 2001. (Docket No. 39 ("Pl.'s SOF") ¶¶ 2-3). All three policies provided that "[p]remiums" were "payable in advance at our Home Office or to an authorized agent on or before the due date" and included an address for United's "Home Office." (Docket No. 1-1, at 2, 11). Zamora's office assistant, Monica Llanos, was responsible for making sure the premium payments were made on time and the policies remained in force. (Pl.'s SOF ¶ 4). From the inception of the policies through 2011, Llanos would obtain bank checks from Banco de Credito and send the premium payments to United — at the address listed on the Company's premium notices — through TNT, an international courier. (*Id.* ¶¶ 8, 41-42).

In or around November 2012, United sent premium notices for the three policies to Zamora at his Lima, Peru address. (*Id.* ¶ 2-3). On November 30, 2012, Llanos obtained and delivered three checks to TNT for delivery to United. (*Id.* ¶¶ 45-47). The delivery address she used was the address included on United's premium notices and it included a P.O. Box. (*Id.* ¶ 91). Unbeknownst to Llanos at the time, TNT had a policy of not delivering to post office boxes. (*Id.* ¶¶ 29, 50). If, despite that policy, a package was accepted for a post office box, the courier would try to locate a physical street address; if unsuccessful, TNT would deliver the package to the United States and then send it to the post office box by U.S. mail. (*Id.* ¶ 84). Consistent with that practice, TNT maintains that it mailed the checks to United via U.S. mail, but it cannot confirm that they were received by the Company since it was delivered to a P.O. Box. (*Id.* ¶¶ 30, 86). United has no record of ever receiving the checks. (*Id.* ¶ 28).

In December 2012, United sent a second set of premium notices to Zamora advising that the premium payments had not been received. (*Id.* ¶ 9). On January 7, 2013, after receiving the second premium notices, Llanos contacted United to report that she had sent in the payments six weeks earlier. (*Id.* ¶¶ 12-13). United told Llanos that the payments had not been received but that United

would search its files and follow up with Llanos through e-mail. (*Id.* ¶ 15).[1] Because United had an incorrect email address for Llanos, however, she never received a follow-up note. (*Id.*). Thereafter, in a letter dated February 4, 2013, United advised Zamora once again that the premium payments had not been received and that the policies had therefore been terminated. (*Id.* ¶¶ 17-18). Sixteen days later, on February 20, 2013, Llanos sent an email to United asking the Company to "track the payment we sent to you on time." (*Id.* ¶ 20).[2] At no point during this back-and-forth did Llanos tell Zamora about the policy termination letters. (*Id.* ¶¶ 16, 19, 22). Nor did she contact the bank to determine if the checks had been deposited or contact TNT to request confirmation of delivery to United. (*Id.* ¶ 23). It was not until October of 2013, when requesting beneficiary information on the three policies, that Zamora learned that United had terminated the policies because of non-payment. (*Id.* ¶ 70).

## THE LEGAL STANDARD

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a

---

[1] Although Llanos testified during her deposition that she was told during the January 7, 2013 call that the payments had not been received by Omaha (Docket No. 39-2, at 42), Zamora now submits a declaration from Llanos stating the opposite. (Docket No. 39 ("Llanos Decl.") ¶ 19 ("I do not recall being advised during that phone call that United of Omaha had confirmed the checks had not been received.")). It is well established, however, that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. . . . Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Accordingly, the Court treats as undisputed the fact that United informed Llanos in the January 7, 2013 call that the payments had not been received.

[2] On March 8, 2013, United also sent letters to Florida and New Jersey addresses on record with the company, which Plaintiff never received. (Pl.'s SOF ¶¶ 64-69).

reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

## DISCUSSION

The parties agree that Zamora's claims turn, in the first instance, on whether United validly terminated the insurance policies at issue for non-payment. Zamora argues that the terminations were invalid because the premiums were "paid" upon mailing. (Docket No. 36 ("Pl.'s Opp'n"), at 14-19). Relying on the language of the policies, United contends that the premiums were not "paid" because they were not received by the Company. (Docket No. 42 ("Def.'s Reply"), at 4). In the alternative, United contends that Zamora cannot presume receipt of the payments from the mere fact of mailing — that is, that he cannot rely on the so-called "mailbox rule" — because it informed Zamora, through his assistant, that the Company had no record of receiving the payments. (*See* Docket No. 39-2, at 42). The Court agrees with United on both fronts.

First, under any law that could apply, it is well established that "the legal effect of mailing an insurance premium is controlled by the intent of the parties. This intent is typically embodied in the written agreement between the parties — the insurance plan." *Barry v. Videojet Sys. Int'l, Inc.*, No. 93-CV-6095 (ACW), 1995 WL 548592, at *3 (N.D. Ill. Sept. 12, 1995); *accord Estate of Beinhauer v. Aetna Cas. & Sur. Co.*, 893 F.2d 782, 786 (5th Cir. 1990) ("The legal effect of mailing

4

an insurance premium is a contractual matter controlled by the intent of the parties."); *Gov't Emps. Ins. Co. v. Solaman*, 157 Misc. 2d 737, 743 (NY Sup. Ct. 1993) ("The effect of mailing a premium, as regards payment, depends wholly upon the intention of the parties."). An insurance plan or policy, in turn, is subject to "the normal rules of contract interpretation: words and phrases should be given their plain meaning and a contract should be construed so as to give full meaning and effect to all of its provisions." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016); *see also Frank v. Reassure Life Ins. Co.*, No. 12-CV-2253 (KBF), 2012 WL 5465027, at *5 (S.D.N.Y. Nov. 9, 2012) ("[Insurance] policies should be interpreted as written, and the policy's terms given their ordinary meaning. As with any contract, courts will not interpret any term of an insurance policy so as to render it superfluous." (citations omitted)).

Applying those principles here, the Court concludes that, under the language of the parties' agreements, United was entitled to terminate the policies unless Zamora's premium payments were actually received by United on or before the due date. *See, e.g.*, *Munoz v. Travelers Indem. Co.*, 359 So. 2d 30, 31 (Fla. Dist. Ct. App. 1978) (finding that an insurance policy was properly cancelled where "the act to be accomplished was not the mailing of the letter, but rather the actual payment of the money for the premium").[3] To be sure, the relevant language of the policies — that "[p]remiums are payable in advance at our Home Office or to an authorized agent on or before the due date" (Docket No. 1-1, at 2, 11) — could have been more explicit. But by making the premiums payable "*at*" the Company's Home Office, the language makes sufficiently plain that receipt, rather than mailing, controls. *See, e.g.*, *Butkovich v. Indus. Comm'n*, 690 P.2d 257, 259 (Colo. Ct. App. 1984) (noting that where a notice of cancellation stated that the premium had to be

---

[3] Contrary to Zamora's unsupported argument (Pl.'s Opp'n 21), his past payments through the mail do not alter the requirements of the policy language. *See, e.g.*, *Lynch v. Miss. Farm Bureau Cas. Ins. Co.*, 880 So. 2d 1065, 1070 (Miss. Ct. App. 2004) (noting that premium payments being sent through the mail to a post office box do not alter a policy requirement that payment must be made at the insurer).

received "at this office" by a date certain, mailing within the renewal period was not itself sufficient to avoid cancellation); *Struhl v. Travelers Ins. Co.*, 255 A.D. 527, 529 (App. Div. 1938) (rejecting the mailbox rule where the contract at issue stated that the "note was due and payable at the Travelers insurance company at 55 John Street, New York City" and quoting an insurance treatise for the proposition that "where a note for the premium is payable at a particular place, and the policy stipulates that the contract is terminated by failure to pay any premium note or interest when due," failure to pay at the designated place "terminates the policy" (quoting 3 *Couch on Insurance* § 658-a)), *aff'd*, 22 N.E. 2d 162 (N.Y. Ct. Appeals 1939); *see also, e.g.*, *Pasco Enters., Inc. v. Southland Ins. Agency, Inc.*, 408 So. 2d 63, 68 (Miss. 1981) (holding that the defendant insurance company "had a right to provide as a condition precedent to the reinstatement of any policy with it that the premium be received at the home office in Elba, Alabama"). Any other interpretation would render the words "at our Home Office" in the policies superfluous.

Second, and in any event, the mailbox rule does not apply in this case for an independent reason: Zamora, through Llanos, was on notice that his checks had not arrived six weeks after he allegedly sent them. Significantly, the mailbox rule is only a "rebuttable presumption." *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993); *see also Hagner v. United States*, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."). It follows that if an insured "knew or should have known that [the insurer] had not received his . . . premium installment, and he thereafter failed to tender the installment . . . , [the insured] would have no claim to the benefits of a renewed policy." *Beinhauer*, 893 F.2d at 787. That is the case here. Before terminating the policies, United sent Zamora two sets of premium notices and notified Llanos by telephone that the Company had not received the

6

payments. (Pl.'s SOF ¶¶ 2-3, 9, 15).[4] Yet, instead of following up with the bank or with TNT, let alone tendering new payments, Llanos merely "assumed" that United would find the checks and tell her it was a mistake. (*Id.* ¶ 22). Having received notice (through his agent) that the payments had not been received, Zamora had an obligation to take appropriate steps to cure the problem. Because he failed to do so, he cannot invoke the mailbox rule and United was entitled to terminate his policies for non-payment.

In opposing summary judgment, Zamora relies principally on *Beinhauer*, in which the Fifth Circuit applied Mississippi's mailbox rule to an automobile insurance policy, but that decision actually highlights the two fatal flaws in Zamora's claims. First, the policy in *Beinhauer* stated only that payment had to be made before the due date and did not require, as Zamora's policies did, that the premium to be in the insurer's possession by that date. *See* 893 F.2d at 786 (noting that the policy does not "define the term 'payment'" and that therefore "the insured is protected against forfeiture of coverage by mailing the required premium in time to reach the insurer by the due date"); *see also Okosa v. Hall*, 315 N.J. Super. 437 (App. Div. 1998) (applying the mailbox rule in the absence of a contractual provision providing that premiums are paid when received by the insurer); *cf. Lynch*, 880 So.2d at 1071 (expressly "agree[ing] with" and "apply[ing]" the "*Beinhauer* analysis," but "reach[ing] a different outcome" where the policy had issue contained "clear contract language" requiring payment to be received by the insurer by the due date). Second, unlike Llanos and Zamora here, the policyholder in *Beinhauer* did not know, and had no reason to know, that his payment had not been received. Indeed, the Court expressly noted that if the policyholder had

---

[4] It is true, as Zamora notes (Pl.'s Opp'n 14-15), that the December 2012 notice specified that "[a]ll" Zamora "need[ed] to do to continue" his coverage was "to mail" the premium payment by the end of a grace period, on January 2, 2013. (Docket No. 41-4). Additionally, the notice stated: "PLEASE DISREGARD THIS NOTICE IF YOU HAVE ALREADY SENT YOUR PAYMENT." (*Id.*). But the conversation between United and Llanos in which Llanos learned that the payments had not been received happened after that notice.

known or should have known, and nonetheless failed to tender payment, he would have had "no claim to the benefits of a renewed policy." *Beinhauer*, 893 F.2d at 787. In short, far from helping Zamora, *Beinhauer* makes clear why his claims fail.

Finally, citing an incident in 2002, when United sent premium notices to an incorrect address and, upon discovering the error, accepted late premium payments, Zamora contends that a material factual dispute exists with respect to whether United should have reversed its terminations due to a "past practice" of accepting late payments of premiums when the late payment was due to the Company's error. (Pl.'s Opp'n 21; *see* Pl.'s SOF ¶ 95). Zamora cites two errors here: United's sending of the January 8, 2013 e-mail intended for Llanos to an incorrect e-mail address and its mailing of the March 8, 2013 letters to the Florida and New Jersey addresses on record with the Company. These arguments fail for several reasons. First, Zamora cites no support for the proposition that reliance can be established from a single incident over ten years earlier. Second, and in any event, the nature of the alleged errors here was fundamentally different from the error made by United in 2002. Non-payment of the premiums here was not a result of United's slip, but was caused by Zamora's error in choosing a private courier that did not deliver to postal office boxes and by Llanos's failure to exercise due diligence in ensuring that payment was received. Finally, both the January 8, 2013 follow-up email and the March 8, 2013 correspondence were sent well after the premium payments were past due (not to mention after Llanos had been notified, on January 7, 2013, that the checks had not arrived. (*See* Docket No. 33-2, at 42).

## CONCLUSION

The Court is not without sympathy for Zamora, who no doubt genuinely believed that he was current with his premium payments and was surprised to learn well after the fact that his policies had been terminated for non-payment. At the same time, the result would surely have been different had Llanos — and Zamora himself — exercised due care to ensure that the payments had

8

been received, particularly after being told that they had not. In any event, for the reasons stated above, the Court is compelled to conclude that United was within its rights under the parties' agreements to terminate the policies. Accordingly, United's motion for summary judgment is GRANTED, and Zamora's claims are dismissed in their entirety.[5] The Clerk of Court is directed to terminate Docket Nos. 34, 43, and 44 and to close this case.

SO ORDERED.

Dated: September 18, 2017
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[5] In light of that, the Court need not and does not reach United's motion to strike. (Docket No. 44).